IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **LORNE WOODS,** | * |
| Plaintiff, | * |
|  | * Civ. No.: MJM-23-996 |
| v. | * |
| **ECI-EAST AND MEDICAL DEPARTMENT,** *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Self-represented plaintiff Lorne Woods, an incarcerated individual, filed this civil action on April 19, 2023, alleging constitutional violations based on inadequate medical care while in custody. ECF No. 1. On September 20, 2023, Defendant ECI-East[1] filed a Motion to Dismiss (ECF No. 17), and, on October 11, "Medical Defendants" Sarah Johnson, Dr. Raab, and YesCare Corp. ("YesCare")[2] filed a Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 22). On December 19, 2023, Medical Defendants were directed to provide Woods and the Court copies of additional medical records relevant to Woods's claims. ECF No. 28. Medical Defendants provided the additional records on December 27. ECF No. 29. On February 7, 2024, Woods filed correspondence with the Court, which is construed as a response in opposition to the pending dispositive motions. ECF No. 32. No hearing is required to resolve the matters pending before the

---

[1] This party is listed in the caption of the Complaint and on the docket as "ECI-East and Medical Department."

[2] Plaintiff also named Nurse Riley as a Defendant (ECF No. 1 at 1), but this Defendant has not been properly identified, and therefore service has not been effected upon them. *See* ECF No. 9. Accordingly, the Complaint will be dismissed without prejudice as to Nurse Riley.

Court. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motions shall be granted.

I. BACKGROUND

   A. Plaintiff's Allegations

At all times relevant to the Complaint, as supplemented, Woods was confined to Eastern Correctional Institution ("ECI"). In June 2022, while assigned to ECI-East, Woods submitted a sick call because he had an ingrown toenail. ECF No. 1 at 2. On an unspecified date, he was transferred to ECI-West. *Id*. Throughout August 2022, Woods submitted several sick call slips. *Id.* at 3. In November 2022, Dr. Raab removed a portion of Woods' toenail and provided Woods antibiotics, but the infection was not cured. *Id.* at 3. Thereafter, Woods submitted sick calls slips and was again provided antibiotics and analgesic medications, but again they did not resolve his issue. *Id.* at 3. In February 2023, Woods's entire toenail was removed, but he continued to suffer from pain, and the toe remained purple and continued to drain pus. *Id.* at 3. In his view, staff did not want to send him to a specialist or to the emergency room for treatment. *Id.* at 3.

Woods also reports that when he tried to submit a grievance, an unidentified officer returned it to him and told him to resubmit the grievance if he was not seen by March 22, 2023. *Id.* At the time of the filing of his Complaint in April 2023, Woods's toe was purple. *Id.* at 3. In October 2023, Woods's toe needed to be incised, and he also contracted Methicillin-resistant Staphylococcus aureus ("MRSA"). ECF No. 32 at 1. He states that his pain was so severe that he could barely walk or wear shoes and socks. *Id.* He reports ongoing "pain and suffering." *Id.*

   B. Medical Defendants' Response

Woods's medical records demonstrate that on July 19, 2022, he submitted a sick call slip concerning his left great toe (ECF No. 22-5 at 32), which resulted in Registered Nurse ("RN")

2

Vaughan evaluating him on July 26, 2022. ECF No. 22-4 at 22–23. Woods stated that he could not put on his socks due to the pain in his toe. *Id.* at 22. His left great toe was slightly swollen, and drainage was noted. *Id.* at 23. Vaughan referred Woods to a provider. *Id.*

On July 30, 2022, RN Warrington treated Woods in response to a sick call he submitted for an infection in his left great toe. ECF No. 22-4 at 18–20. "[D]raining rose purulent exudate for over 1 week" was noted. *Id.* at 18. The toe was swollen and painful. *Id.* Dr. Raab was consulted by telephone, ordered an antibiotic (Bactrim) for 10 days, and directed that Woods be seen that week. *Id.* 18–19. Additionally, Woods was provided bandages and directed to keep the area clean and to not manipulate the area. *Id.* at 18. This telephone consultation was the only involvement Dr. Raab had in Woods's care. ECF No. 22-2 ¶ 5 (Raab Decl.).

Woods refused to attend sick call for complaints regarding his ingrown toenail on August 28, 2022. ECF No. 22-5 at 2. RN Johnson evaluated Woods at sick call for complaints about his ingrown toenail on September 20, 2022. ECF No. 22-5 at 9. Johnson spoke to Woods at his cell door. She noted a small amount of dried blood on the posterior edge of the toe. *Id.* The toe was cleaned with an alcohol pad and a clean, dry dressing was placed. *Id.* No signs or symptoms of infection were observed. *Id.* Additionally, Johnson gave Woods two Tylenol pills for pain relief. *Id.*

Physician Assistant ("PA") Bruce Ford performed a wedge resection, removing the left side of Woods' toenail, on October 21, 2022. ECF No. 22-4 at 7–8. Woods was instructed about wound care and prescribed an antibiotic (Cephalexin/Keflex). *Id.*

On December 1, 2022, PA Campbell examined Woods. Woods reported that part of his toenail was removed the preceding month and now the other side of the toe was painful. ECF No. 22-3 at 35; ECF No. 22-4 at 1–2. The toe was swollen, and the lateral aspect of the toe was tender

3

to palpation; there was no redness or drainage. *Id.* Campbell continued Woods's antibiotic ointment and scheduled Woods for complete removal of the toenail. ECF No. 22-4 at 1–2.

PA Ford saw Woods again on January 5, 2023. Woods explained his history of ingrown toenails and stated that the right middle toenail was ingrown and infected. ECF No. 22-4 at 32–34. Ford prescribed an antibiotic (Cephalexin/Keflex), discussed proper nail care, and directed that Woods return for follow up in two to three weeks to consider whether another wedge resection was required. *Id.*

The following day, Woods was seen at sick call. ECF No. 22-4 at 30. RN Johnson noted that Woods was seen the night before regarding his ingrown toenail. *Id.* He was given the first dose of the prescribed antibiotic from stock and was also provided analgesic medication. *Id.*

PA Ford evaluated Woods again on January 20, 2023. ECF No. 22-3 at 28–29. Ford performed a wedge resection during the visit. *Id.* at 28. Woods was prescribed an antibiotic (Bactrim) for 10 days. *Id.* at 29. The next day, RN Desir evaluated Woods during sick call. ECF No. 22-3 at 26. Woods complained that his toe was infected and that the prescribed medication was not working. *Id.* Desir noted that Ford had recently removed the toenail. *Id.*

On February 9, 2023, PA Ford again treated Woods. ECF No. 22-3 at 22–24. The left medial aspect of Woods' left great toe was infected. *Id.* at 22. Ford noted that the last wedge resection was to the lateral aspect. *Id.* Ford discussed foot care with Woods, ordered Epsom salt foot soaks and an antibiotic (Bactrim), and directed Woods to return in ten to fourteen days to consider whether another wedge resection would be necessary. *Id.* Ford also recorded that he would consider removing the entire nail at the follow-up appointment. *Id.* Ford prescribed ibuprofen for pain relief. *Id.* at 24.

RN Johnson evaluated Woods two days later due to his complaints of shoulder dislocation and left great toe pain. ECF No. 22-3 ¶ 20–21. The left great toenail was clean and dry with an intact dressing. *Id.* ¶ 21. Woods was provided Tylenol and advised that he was scheduled for a follow-up for resection of the left great toenail. *Id.*

Dr. Paul Matera conducted the follow-up examination of Woods on February 21, 2023. ECF No. 22 ¶17–19. Woods's left great toe was tender and red. *Id.* ¶ 17. He agreed to removal of the entire toenail and indicated he understood the nail might not grow back. *Id.* Dr. Matera prescribed an antibiotic (Clindamycin) and directed Woods to return to the clinic the following day for toenail removal. *Id.* Woods was also given indomethacin, a nonsteroidal anti-inflammatory, for pain relief. *Id.*

The next day, Dr. Matera removed Woods's toenail. ECF No. 22-2 at ¶ 14. Woods's toe was bandaged, and a triple antibiotic ointment was applied. *Id.* Woods was scheduled to return to Dr. Matera for follow up on March 14, 2023, but after waiting 20 minutes to be seen, he advised the nurse that he did not wish to wait any longer, signed a release of responsibility, and left the medical unit without being seen. *Id.* at 12; ECF No. 22-5 at 1.

PA Ford evaluated Woods on May 16, 2023, during sick call. ECF No. 22-3 at 10–12. Woods reported discoloration of his left great toe. *Id.* at 10. No drainage or redness was observed, nor were any signs of infection noted. *Id.* Ford ordered x-rays be taken. *Id.* at 11.

PA Johnson saw Woods on May 24, 2023, during sick call. ECF No. 22-3 at 8–9. Woods denied pain and was not in distress. *Id.* at 9. Johnson noted that Woods had been seen on May 16, 2023. *Id.* at 9.

The following day, x-rays of Woods's left great toe were taken. ECF No. 22-6 at 31–32. No evidence of an acute osseous fracture was observed and the joints were described as

"maintained." *Id.* at 31. There was no evidence of soft tissue swelling or a foreign body. *Id.* The radiologist recommended additional testing "to exclude an occult fracture" if Woods's pain persisted. *Id.* at 31.

PA Ford met with Woods on July 11, 2023, regarding the results of the x-ray. ECF No. 22-7 at 2. Woods again complained that his left great toe remained discolored but denied any other signs, symptoms, pain, or infection. *Id.* Ford recorded that no treatment was required. *Id.*

Woods was seen by various medical providers throughout August 2023 for issues unrelated to his toe. ECF No. 22-7 at 11–20.

In October 2023, Woods submitted several sick call slips complaining that his left great toe was purple and painful. ECF No. 29-2 at 17–24. On October 16, 2023, he was evaluated by RN Desir during sick call. ECF No. 29-1 at 32. Signs of dry drainage were noted, so Woods was taken to PA Ford, who referred Woods to Dr. Matera. *Id.* The next day, he was prescribed an antibiotic (amoxicillin) and ibuprofen. *Id.* at 27, 30. It was recorded that he had been on the antibiotic cephalexin from August 25, 2023, to September 8, 2023, and again from September 28, 2023, to October 8, 2023. *Id.* at 25, 30. It was also noted that Woods "previously had the entire nail removed, it's grown back and is exerting painful pressure medially with scant drainage described as pus." *Id.* at 25. At Woods' request, a partial removal of the nail was done and the drainage cultured. *Id.* at 25, 31.

Certified Registered Nurse Practitioner ("CRNP") Roderer evaluated Woods on October 24, 2023. ECF No. 29-1 at 23. The wound culture was positive for MRSA. As Woods was already on an appropriate antibiotic, he was directed to finish taking the antibiotic. He was also instructed on how to care for the nail bed as the toenail grew back. *Id.* at 24.

6

On November 8, 2023, CRNP Roderer again saw Woods regarding his toe.[3] Roderer recounted Woods's recent relevant medical history. Woods's toe was infected laterally, and the toenail ingrown. An anesthetic was applied, and the toe incised with a small scalpel. Foul smelling pus drained from the toe and was sent for culture. Woods was given an intramuscular dose of the antibiotic ceftriaxone and directed to return to the dispensary twice a day for foot soaks. Roderer also placed a request for a podiatry consultation. ECF 29-1 at 16, 19.

On December 1, 2023, Woods was seen at sick call. Increased swelling, drainage, and pain were observed in Woods' left great toe. He was provided ibuprofen. ECF No. 29-1 at 11–12. RN Daniel-Foster contacted the medical provider who directed that Woods was to have daily wound checks and foot soaks and was to see the provider the following Monday. *Id.*

CRNP Roderer again evaluated Woods on December 8, 2023. ECF No. 29-1 at 9–10. She noted that Woods had not been seen by podiatry that week. *Id.* On examination, the toe was painful but did not appear infected. *Id.* Woods was directed to soak his foot twice daily in an Epsom salt bath and apply mupirocin ointment until he was seen by podiatry. *Id.*

On December 17, 2023, Woods was still going to the infirmary daily for foot soaks. ECF No. 29-1 at 8. He advised RN Johnson that his left great toe hurt, and he wished to be seen by a provider. *Id.* He was provided ibuprofen and mupirocin. *Id.* Two days later, Woods was seen at sick call for his ongoing complaints of left great toe pain and left shoulder pain. *Id.* at 3. He was referred to a provider and was directed to continue using the medications previously provided. *Id.* at 6. Woods stated that he was not using the mupirocin ointment because, in his view, it would not help his toe. *Id.*

---

[3] The medical records indicate that Woods was seen for an ingrown toenail on his right great toe, but that appears to be an error given the medical history concerning his left toe. ECF No. 29-1 at 17–18.

Defendant Johnson explains that, as a registered nurse, she "cannot diagnose any condition, order any diagnostic testing, or prescribe any medications." ECF No. 22-8 ¶ 5. She explains that her role in the provision of medical care is to evaluate the patient and provide over-the-counter medications when appropriate, which she avers she did in Woods's case. *Id.*

## II.     STANDARD OF REVIEW

Defendant ECI-East asserts that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 17. Medical Defendants assert that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, that summary judgment should be granted pursuant to Fed. R. Civ. P. 56. ECF No. 22.

A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where the plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

8

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). And though district courts have a duty to construe self-represented pleadings liberally, a plaintiff must nevertheless allege facts that state a cause of action. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985) (duty to construe liberally does not require courts to conjure up questions never squarely presented).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and

9

all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful, however, that Woods is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)). The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

Defendant ECI-East asserts in its Motion to Dismiss that Woods fails to state a claim for relief. ECF No. 17. Medical Defendants assert in their motion that Woods failed to state a claim and that they are otherwise entitled to summary judgment. ECF No. 22. The latter motion attaches exhibits that relate specifically to Woods's medical care. ECF No. 22-2 through 22-8. The portion of the motion that relates to Defendant YesCare is construed as a motion to dismiss, and the portion that relates to Defendants Raab and Johnson is construed as a motion for summary judgment.

### III. ANALYSIS

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42

U.S.C. § 1983; *see also Filarsky v. Delia*, 566 U.S. 377 (2012); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015). Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)).

### A. Person Requirement

Defendant ECI-East is not a "person" subject to suit under 42 U.S.C. § 1983 and, therefore, Woods' claims against it must be dismissed. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (2002). The entity Woods identifies as "ECI-East and Medical" does not exist. ECI-East is a building. A number of courts have held that inanimate objects such as buildings, facilities, and

grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cnty. Corr. Facility*, Civ. No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"). Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person. As such, ECI-East's Motion to Dismiss will be granted.

### B. Personal Participation

In a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999); *Clark v. Md. Dep't of Pub. Safety and Correctional Servs.,* 316 Fed. Appx. 279, 282 (4th Cir. 2009).

Thus, supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Woods does not allege any facts suggesting that Defendant YesCare was personally involved in or otherwise aware of the decisions regarding the provision of medical care to him. As such, YesCare will be dismissed.

### C. Eighth Amendment

Woods alleges that Defendants Raab and Johnson failed to provide him adequate medical care. The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *See* U.S. Const. amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To sustain a claim for denial of medical care under the Eighth Amendment, a plaintiff must show that the defendant's acts or omissions were done with deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko*

*v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *accord Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendant was subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40; *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). Indeed, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (citation omitted). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through other evidence that tends to establish the defendant knew about the problem. *Scinto*, 841 F.3d at 226. This includes evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Farmer*, 511 U.S. at 842).

Mere negligence or malpractice does not rise to a constitutional level. *Donlan v. Smith*, 662 F.Supp. 352, 361 (D. Md. 1986). "Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Scinto*, 841 F.3d at 225 (quoting *Farmer*, 511 U.S. at 835) (alteration in original); *Russell v. Sheffer*, 528 F.2d 318, 318–19 (4th Cir. 1975) ("[M]istreatment or non-treatment must be capable of characterization as 'cruel and unusual punishment' in order to present a colorable claim").

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew of at the time. *See Lightsey*, 775 F.3d at 179 (noting physician's act of prescribing treatment raises a fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Additionally, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977)).

The record evidence demonstrates that Dr. Raab treated Woods on only one occasion, when he was consulted by telephone regarding Woods's condition. ECF No. 22-2 ¶ 5; ECF No. 22-4 at 18–19. He prescribed an antibiotic and directed Woods to return for follow-up care. *Id.* Dr. Raab's involvement with Woods' care was minimal, and his actions were reasonable to address Woods's needs. Thus, Dr. Raab is entitled to summary judgment.

While Nurse Johnson had several encounters with Woods regarding his ingrown toenail and infection, her responsibilities as a registered nurse were simply to assess the medical condition, provide over the counter medications, and, where appropriate, refer Woods to a provider for further treatment. ECF No. 22-1 at 2. Johnson's first encounter with Woods occurred on September 20, 2022, when she evaluated him at his cell door. ECF No. 22-1 at 3. She noted that there was a small amount of blood on Woods' toe but there was no sign of infection. *Id.* She cleaned Woods' toe, applied a dressing, and provided him Tylenol for pain relief. *Id.* Later, Johnson saw Woods at sick call after he had already been seen by a provider the day before regarding his toe. *Id.* at 4. During that encounter, she provided him his first dose of the antibiotic prescribed and also gave him analgesic pain medication. *Id.* Johnson again evaluated Woods on February 11, 2023, two days after he had been seen by PA Ford. *Id.* at 5. At that time, Woods' toenail was clean and dry with an intact dressing. *Id.* She gave Woods Tylenol and advised him that he was scheduled for a follow-up for resection of the toenail. Johnson's last encounter with Woods occurred on May 24, 2023, during sick call. *Id.* Woods was seen the week before by a provider, and during this visit, he denied being in pain. *Id.* at 6.

On this record, the Court cannot say that Johnson was deliberately indifferent to Woods' medical needs. On each occasion, she examined Woods and provided analgesic medication when he reported pain. She either referred Woods to a provider or noted that a provider visit was already scheduled or had very recently occurred. Moreover, as a registered nurse, her conduct was within the scope of her practice, and she was not authorized to do more.

Lastly, there is no evidence that Woods' unnamed medical providers were deliberately indifferent to his serious medical needs. To the contrary, Woods's medical records demonstrate that he received treatment for his ingrown toenail that included several resections of the toenail,

16

ultimately resulting in the removal of the entire toenail. He was provided analgesic medication as well as antibiotics. He was provided diagnostic testing including x-rays and cultures of his wound. He was also provided regular wound care and foot soaks. While Woods was clearly in pain as a result of the ingrown toenail—and, likely, frustrated by the length of time it took to resolve the issue, particularly with his contracting MRSA—the record does not support a finding that medical providers were deliberately indifferent to his serious medical needs.

## IV.   CONCLUSION

For the reasons stated herein, Defendant ECI-East's Motion to Dismiss is GRANTED. Medical Defendants' Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, is GRANTED as to Defendants Raab and Johnson, and construed as a Motion to Dismiss, is GRANTED as to Defendant YesCare. The Complaint is dismissed without prejudice as to Defendant Riley. A separate Order follows.

DATED: June 12, 2024

                                            Matthew J. Maddox
                                            United States District Judge